IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24–cv–00926–RMR–MDB

STARR RIOS,

     Plaintiff,

v.

ADAMS COUNTY SHERIFF GENE CLAPS, in his official capacity,
WELLPATH, LLC, as a nominal defendant,
MATTHEW J. DUNDON, TRUSTEE OF WELLPATH HOLDINGS, INC. LIQUIDATING
TRUST, as a nominal defendant,
MICHELLE BARNES,
MATTHEW VILLAMANA,
KAYLA VANGORDER,
DARIUS ARDREY,
JACQUELINE CRUZ-ENRIQUEZ,
JENNIFER OVERMYER,
BERLIN ALMEDA,
ROSS YNIGUEZ,
NETEAL THARP,
XOCHILT NOYOLA VIGIL,
GILBERT NOVOGRADAC,
MANDY HILL,
GREGORY BARNES,
NICOLE HASS,
MARYANN MARTHA MAGLEY-HERMAN,
KRISTINA MEYER,
RICHARD DILLON-MELVIN YODER,
SHANNON PERRET,
RHONDA STEWART, and
DEBORAH REYNOLDS, individually,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Maritza Dominguez Braswell**

This matter is before the Court on Defendant [Michelle] Barnes' Motion to Dismiss (["Barnes Motion"] Doc. No. 140) and the Wellpath Defendants'[1] Motion to Dismiss Plaintiff's Amended Complaint (["Wellpath Motion"], Doc. No. 148) (collectively the "Motions").[2] (Doc. Nos. 140; 148.) Plaintiff has responded in opposition to each Motion (Doc. Nos. 154; 163), and Defendants have replied in support (Doc. Nos. 177; 192). After reviewing the Motions, briefing and relevant law, the Court respectfully **RECOMMENDS** that the Barnes and Wellpath Motions be **DENIED**.

## BACKGROUND

Plaintiff Starr Rios is a 49-year-old who has long-suffered from mental illness, including bipolar disorder. (Doc. No. 129 ¶ 43.) From her first diagnosis and throughout her adult life, Plaintiff has required treatment, including medication, to manage her symptoms. (*Id.* at ¶ 44.) When receiving appropriate treatment, Plaintiff has lived a healthy and stable life, maintaining employment and living independently for many years. (*Id.* at ¶ 45.) However, "in approximately 2021," Plaintiff began to decompensate after her long-time treatment provider retired and after the death of a family member. (*Id.* at ¶ 46.) During this period Plaintiff did not receive medication and her symptoms worsened. (*Id.*)

On April 7, 2022, Plaintiff was arrested and detained at the Adams County Detention Facility (the "jail" or "ACDF") on a pending charge and an alleged probation violation. (*Id.* at ¶ 47.) Plaintiff had been briefly detained at the jail for shorter periods in December 2021, January

---

[1] The "Wellpath Defendants" are Defendants Hass, Magley-Herman, Meyer, Yoder, Perret, Stewart, and Reynolds ("Individual Wellpath Defendants"), who are sued in their individual capacity, and Wellpath LLC and its trustee, Matthew Dundon, which are sued as nominal defendants. (*See* Doc. No. 129 ¶¶ 17, 21, 36–42.)

[2] The Adams County Defendants also filed a Motion to Dismiss. (Doc. No. 157.) However, on July 28, 2026, Plaintiff informed the Court she had reached a settlement with Adams County, rendering the Motion to Dismiss moot. (*See* Doc. No. 211; .)

2022, and March 2022, during which she repeatedly reported needing medication for her mental illness and demonstrated symptoms of that illness. (*Id.*) According to the Amended Complaint, jail guards, medical providers, and supervisors were therefore aware, even before her April 7 detention, that Plaintiff struggled with serious mental illness and needed medication to control her conditions. (*Id.* at ¶ 48.)

On April 8, 2022, Plaintiff received an intake assessment, during which she reported diagnoses of bipolar disorder and schizophrenia, a history of prior psychiatric hospitalization, and prior prescription medication and outpatient treatment. (*Id.* at ¶ 49.) She reported that she was not taking her prescription medication at that time. (*Id.*) According to the Amended Complaint, throughout her time in the jail, Plaintiff exhibited symptoms of paranoia, delusions, incoherent and rambling statements, religious delusions, and other manifestations of acute mental illness and psychosis. (*Id.* at ¶ 50.) At all relevant times, Adams County contracted with Wellpath, LLC to provide medical and mental health services to jailed persons. (*Id.* at ¶ 18.)

On April 8, 2022, Defendant Hass assessed Plaintiff and allegedly observed symptoms of psychosis, delusions, and serious mental illness, including Plaintiff screaming nonsensically, behaving combatively, banging on the door, and appearing to hallucinate. (*Id.* at ¶¶ 36, 52.) Despite these observations, Defendant Hass allegedly ordered a "routine" mental health referral rather than an "urgent" or "emergent" one, and did not refer Plaintiff to a psychiatric provider who could prescribe medication. (*Id.* at ¶ 53.) Defendant Hass allegedly knew that this designation would mean a delay of at least several weeks before Plaintiff would be seen by a psychiatric provider or receive medication. (*Id.* at ¶ 54.)

On April 9, 2022, Defendant Meyer assessed Plaintiff, who allegedly continued to manifest psychotic symptoms. (*Id.* at ¶ 56.) Defendant Meyer did not refer Rios to psychiatry or

3

recommend a medication evaluation. (*Id.* ¶ 57.) Also on April 9, 2022, Defendant Yoder, another Wellpath employee, assessed Plaintiff after she made bizarre statements, including a delusional report of being pregnant that testing contradicted, and returned her to her housing unit without notifying psychiatry or requesting an urgent referral. (*Id.* at ¶¶ 39, 58–59.)

On April 11, 2022, Defendant Magley-Herman assessed Plaintiff in the medical unit and observed her crying, yelling, delusional, agitated, and unable to answer questions coherently, but allegedly took no action to refer her to psychiatry or for a medication assessment. (*Id.* at ¶ 60.) On April 13, 2022, Defendant Perret assessed Plaintiff in her housing unit and allegedly observed continued psychosis, poor hygiene, self-inflicted scratching and scabbing on her wrists, and delusional statements, yet did not refer her for psychiatric care or medication. (*Id.* at ¶¶ 61–62.) On April 16, 2022, Defendant Meyer again assessed Plaintiff and allegedly found her so ill that Defendant Meyer could not complete the assessment or evaluate Plaintiff's safety, yet again did not refer her for psychiatry or a medication evaluation. (*Id.* at ¶¶ 63–64.) On April 22, 2022, Defendant Magley-Herman was to conduct a Mental Health Initial Assessment and allegedly was aware of Plaintiff's diagnoses and history of treatment, but did not refer her for psychiatry, a medication evaluation, or hospitalization. (*Id.* at ¶¶ 65–66.)

On June 8, 2022, Defendant Stewart, Wellpath's psychiatric provider, assessed Plaintiff. (*Id.* at ¶ 67.) This was the first time a psychiatric provider met with Plaintiff. (*Id.*) Defendant Stewart noted Plaintiff's "obvious" mental health needs and poor insight, and allegedly found her disheveled, agitated, psychotic, and delusional. (*Id.*) Stewart allegedly failed to prescribe medication, hospitalize Plaintiff, or take other action to ensure she received urgent care, even though, according to the Amended Complaint, more than twenty-five hospitals in Colorado were

available to receive patients for acute mental health crises, including involuntary hospitalizations. (*Id.* at ¶¶ 68–69.)

On June 25, 2022, Defendant Magley-Herman again assessed Plaintiff, and allegedly was informed that there was feces, food, and blood "all over her cell." (*Id.* at ¶ 70.) Defendant Magley-Herman observed Plaintiff yelling nonsense, incoherent, and unable to care for her hygiene, but again did not refer her for urgent psychiatric care, hospitalization, or medication. (*Id.* at ¶¶ 70–71.) On June 30, 2022, Defendant Reynolds, a Wellpath psychiatrist, conducted a telehealth assessment, reviewed Plaintiff's chart, and allegedly learned of her severe chronic untreated mental illness and history of antipsychotic medication. (*Id.* at ¶¶ 42, 72.) Defendant Reynolds allegedly recognized that Plaintiff was too ill to cooperate voluntarily with medication and that involuntary hospitalization and medication were emergently necessary, yet did not seek to hospitalize Plaintiff or obtain an involuntary medication order. (*Id.* at ¶ 73.)

On July 8, 2022, Rios appeared in court "malodorous," with matted hair, unaware of her surroundings, and speaking gibberish. (*Id.* at ¶ 75.) On July 21, 2022, Defendant Reynolds again assessed Rios and allegedly observed that she remained psychotic and unable to take medication voluntarily, but once more did not seek emergency hospitalization or an involuntary medication order. (*Id.* at ¶¶ 76–77.)

On July 27, 2022, Plaintiff was transferred to the Colorado Mental Health Institute ("CMHI") at Fort Logan. (*Id.* at ¶ 103.) The Amended Complaint alleges that Fort Logan doctors were alarmed by Plaintiff's physical and mental condition upon intake, noting her "ongoing delusional, manic, and psychotic behavior, as well as dried blood, poor hygiene, and hair so matted that staff had to cut it off." (*Id.* at ¶ 104.) Fort Logan doctors allegedly concluded that Plaintiff had been traumatized by Defendants' conduct and diagnosed her with post-traumatic

stress disorder attributed to her treatment in the jail. (*Id.* at ¶ 105.) On August 15, 2022, Fort Logan staff sought a court order to involuntarily medicate Plaintiff. (*Id.* at ¶ 107.) Once medicated, Plaintiff's condition improved quickly, and she began voluntarily taking medication and participating in treatment. (*Id.*) Plaintiff was eventually released to the community and continues to receive outpatient treatment. (*Id.* at ¶ 6.)

***Competency Proceedings***

The Amended Complaint alleges that Plaintiff was at times so ill that she was unable to meet with her legal counsel or attend court hearings, and that jail staff on occasion refused to transport her to legal visitation. (*Id.* at ¶ 79.) On April 21, 2022, the court presiding over Plaintiff's pending charges ordered a competency evaluation based on her apparent inability to understand the proceedings. (*Id.* at ¶ 80.) No evaluation was performed through the rest of April and most of May, and a competency report was not filed until May 27, 2022. (*Id.* at ¶ 81.) On June 8, 2022, Plaintiff was found incompetent to proceed and ordered committed for inpatient restoration to competency, but she remained in the jail for approximately seven more weeks. (*Id.* at ¶ 93.)

Defendant Barnes[3] was, at all relevant times, the executive director of the Colorado Department of Human Services ("CDHS"). (*Id.* at ¶ 137.) According to Plaintiff, under Colorado law, CDHS is required to ensure that potentially incompetent pretrial detainees receive competency evaluations within twenty-one days and, where inpatient treatment is necessary, hospitalization within twenty-one days. (*Id.* at ¶ 138.) The Amended Complaint alleges that Defendant Barnes has long known that CDHS routinely fails to meet these deadlines, that a 2019 consent decree required compliance or the payment of fines, and that CDHS has paid

---

[3] Defendant Barnes is sued in her individual capacity. (Doc. No. 129 at ¶ 22.)

approximately $30 million in fines rather than complying. (*Id.* at ¶¶ 139–40.) Plaintiff says

Defendant Barnes "knew that jails, particularly including Adams County jail, routinely and as a

matter of policy and practice fail to provide constitutional mental health." (*Id.* at ¶ 142.)

***Plaintiff's Claims and the Motions***

Plaintiff asserts various claims, but this Recommendation addresses only one: the

Fourteenth Amendment deliberate indifference claim brought against the Wellpath Defendants

and Defendant Barnes in their individual capacities.[4] (*Id.* at ¶¶ 147–62.) Defendant Barnes

argues that it fails as against her because she is not a prison official nor is she alleged to have

personally participated in Plaintiff's care. (Doc. No. 140 at 7–8, 11–12.) She further argues that

regardless, the claim is not plausibly alleged under Rule 12(b)(6).[5] (*Id.* at 8–11.) The Wellpath

Defendants also move to dismiss for failure to state a claim. (Doc. No. 148.)

**LEGAL STANDARD**

---

[4] The Amended Complaint asserts a total of seven claims. Five of those claims were brought solely against the Adams County Defendants, and are not addressed herein. (*See* Doc. No. 129 at ¶¶ 171–231.) Additionally, one of the seven claims (Claim 2) is a Fourteenth Amendment *Monell* claim, brought against Adams County as well as Wellpath and Defendant Dundon, the trustee of Wellpath Holdings, Inc., Liquidating Trust. (*See id.* at ¶¶ 163–70.) But the Wellpath Motion states that the Wellpath Defendants do not move for dismissal on that claim because "it was discharged in [Wellpath's] bankruptcy" proceedings. (Doc. No. 148 at n.1.) Plaintiff's response to the Wellpath Motion does not address this statement, and the Court presumes Plaintiff agrees that her *Monell* claim against Wellpath has been discharged. (*See* Doc. No. 163.) Accordingly, this Recommendation also does not address Plaintiff's *Monell* claim.

[5] Defendant Barnes also says she is entitled to qualified immunity. However, her Motion focuses on Plaintiff's purported failure to state a claim for relief and does not analyze whether the law at issue was clearly established. (Doc. No. 140 at 12–13.) In her Response, Plaintiff contends the Barnes Motion "waiv[es]" the clearly established law prong of the argument. (Doc. No. 154 at 15.) Defendant Barnes' reply does not address Plaintiff's waiver argument and merely states that Plaintiff has "not demonstrated a violation of the Fourteenth Amendment." (Doc. No. 177 at 13–14.) Without deciding whether this effects a true waiver for the life of the case, the qualified immunity analysis will rest on the constitutional violation prong because the Court will not make clearly established law arguments for Defendant.

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," i.e., those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id*. at 679.

That being said, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc. v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

8

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citation omitted).

## ANALYSIS

"Under the Fourteenth Amendment due process clause, 'pretrial detainees are ... entitled to the degree of protection against denial of medical attention which applies to convicted inmates' under the Eighth Amendment." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Garcia v. Salt Lake Cnty.*, 768 F.2d 303, 307 (10th Cir. 1985)). "A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). To state a cognizable deliberate indifference claim, a Plaintiff must make a two-part showing: (1) an objective prong and (2) a subjective prong. *Strain v. Regalado*, 977 F.3d 984, 989–90 (10th Cir. 2020).

To satisfy the objective component, a prisoner must demonstrate that his medical need is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). A medical need is sufficiently serious if "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal citation omitted).

To satisfy the subjective component, a prisoner must demonstrate that the defendant acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. "A showing of simple or even heightened negligence will not suffice." *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1286 (10th Cir. 1999) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997)). Rather, the defendant must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* [T]he subjective component can be satisfied under two theories: failure to properly treat a serious medical condition ('failure to properly treat theory') or as a gatekeeper who prevents an inmate from receiving treatment or denies access to someone capable of evaluating the inmate's need for treatment ('gatekeeper theory'). *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023).

## I.    Defendant Barnes

As the parties appear to acknowledge, this is not a "standard" deliberate indifference claim. Defendant Barnes is not a jail official, was not employed by the entity that detained Plaintiff, and had no role in Plaintiff's day-to-day care or conditions of confinement. Instead, she is alleged to have led a separate state agency whose failure to timely evaluate and hospitalize Plaintiff prolonged Plaintiff's detention in a facility that failed to treat her. The threshold question, then, is whether a deliberate indifference claim is even available in this context.

Defendant Barnes begins by arguing that jail-related deliberate indifference claims are limited to claims against "prison officials." (Doc. No. 140 at 7–8.) But the framing of this restriction is too broad. There is no question that private parties who are contracted to provide services to incarcerated individuals can be liable under this framework. *See West v. Atkins*, 487

10

U.S. 42, 55–57 (1988) (concluding that a private doctor working in a jail via contract may be sued under section 1983). The relevant question is not the defendant's title or her employer, but her relationship to the constitutional obligation at issue. *Id.* at 55–56 ("It is the [defendant's] function within the state system, not the precise terms of his employment, that determines whether his actions [can be reached by a § 1983 claim].").

Defendant Barnes also appears to argue that she had no authority over Plaintiff's conditions of confinement, and thus never bore the responsibilities that underpin a deliberate indifference claim. (*See* Doc. No. 140 at 7–8 (saying Plaintiff does not allege "Director Barnes had authority over Plaintiff's conditions of confinement").) Plaintiff argues that this framing misapprehends the nature of her claim. She does not allege that Defendant Barnes controlled the Adams County jail, directed her housing or discipline, or bore responsibility for any of the medical care provided there. Instead, Plaintiff alleges that Defendant Barnes controlled the competency evaluation that could have removed Plaintiff from ACDF altogether. Under Plaintiff's theory, Defendant Barnes bore a legal duty running to incompetent pretrial detainees, possessed the authority and obligation to ensure that CDHS met its statutory deadlines, and knew that failing to do so would leave such detainees, to suffer untreated. That, Plaintiff argues, is deliberate indifference.

Even assuming the deliberate indifference doctrine supports such a theory, Defendant Barnes correctly observes that the Amended Complaint contains no allegation that Defendant Barnes was directly involved in Plaintiff's particular case. Plaintiff does not allege that Defendant Barnes ordered the delay in her hospitalization, participated in any decision concerning her care, or was otherwise aware of Plaintiff's circumstances. *See Stepp v. Lockhart*, 168 F.4th 1286, 1300 (10th Cir. 2026) (distinguishing "personal liability" and "supervisory

liability" under section 1983 and noting, "[p]ersonal liability ... 'must be based on personal involvement in the alleged constitutional violation.'" (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997))). The claim against Defendant Barnes therefore proceeds, if at all, on a theory of supervisory liability.

Supervisory liability "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements...a policy...which subjects, or causes to be subjected that plaintiff to the deprivation of any rights...secured by the Constitution." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (quoting 42 U.S.C. § 1983) (cleaned up). However, "[b]ecause vicarious liability is inapplicable to...§ 1983 suits, a plaintiff must plead that the [government official], through the official's *own* individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added). In other words, "a plaintiff must 'show an affirmative link between a supervisor and the alleged constitutional injury.'" *Stepp*, 168 F.4th at 1300–01 (quoting *George v. Beaver Cnty.*, 32 F.4th 1246, 1255 (10th Cir. 2022)). "This requires a plaintiff to 'prove: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" *Id.* (quoting *George*, 32 F. 4th at 1255).

Here, the Amended Complaint alleges that Defendant Barnes bore personal responsibility for ensuring CDHS provided timely competency evaluations and placement in inpatient hospitalization within the deadlines Colorado law prescribes. (Doc. No. 129 at ¶¶ 137–38.) It alleges that she has known that CDHS routinely failed to meet those deadlines, and that the failure was so entrenched that it produced prior litigation and a consent decree. (*Id.* at ¶ 139.) It also alleges that, rather than expanding the staffing and hospital capacity necessary to bring the

12

agency into compliance, Ms. Barnes permitted CDHS to absorb the resulting penalties under the consent decree. (*Id.* at ¶ 140.) In other words, according to Plaintiff, Defendant Barnes has made an ongoing, deliberate choice about how the agency operates that results in a violation of Plaintiff's constitutional rights. Construing them in Plaintiff's favor, the allegations describe a supervisor who "promulgated, created, implemented or possessed responsibility for the continued operation of a policy." *Dodds*, 614 F.3d at 1199.

Plaintiff must also plead a culpable state of mind. Specifically, the allegations must demonstrate that Defendant Barnes "acted knowingly or with deliberate indifference that a constitutional violation would occur." *Dodds*, 614 F.3d at 1196 (quoting *Serna v. Colorado Department of Corrections,* 455 F.3d 1146, 1154 (10th Cir. 2006). "This requires pleading that [Defendant Barnes was] 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists.'" *Bouhmidi*, 2026 WL 879225, at *12 (quoting *Farmer*, 511 U.S. at 837). Here, the Amended Complaint alleges Defendant Barnes knew that delays in evaluation and hospitalization leave seriously mentally ill detainees to deteriorate untreated in county jails, and that such delays produce prolonged suffering. (Doc. No. 129 at ¶ 141.) It alleges that she knew these delays were not occasional but systemic, and indeed, actively chose to pay penalties for such delays. (*Id.* at ¶ 145.) And it alleges that she knew ACDF, in particular, routinely failed to provide constitutionally adequate mental health care to detainees like Plaintiff, such that the consequences of delay in that facility were especially foreseeable. (*Id.* at ¶ 142.) Taken together with the allegations that Defendant Barnes was involved in the 2019 consent decree and absorbed the penalties thereunder instead of addressing the systemic failures, the allegations are sufficient to establish a culpable state of mind.

Next, the Court considers causation. To establish causation against a supervisor defendant, "a plaintiff must show that the [supervisor's] action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [supervisor's] action and the deprivation of federal rights." *Dodds*, 614 F.3d at 1202 (citing *Brown*, 520 U.S. at 404). Here, Plaintiff alleges that the state court ordered a competency evaluation on April 21, 2022, but that no evaluation was completed and no report filed until May 27, 2022, roughly two weeks past the twenty-one-day deadline Colorado law prescribes. (Doc. No. 129 at 80–81.) She then alleges that after being found incompetent, the delay compounded, as rather than being hospitalized within the statutory period, she remained in the jail for roughly seven additional weeks, and was not transferred to CMHI until July 27, 2022. (*Id.* at ¶¶ 93, 103.) According to Plaintiff, had CDHS met its deadlines, she would have been evaluated and transferred to an appropriate inpatient facility months earlier. (*Id.* at ¶¶ 143–44.) The Amended Complaint further alleges that this interval resulted in active deterioration. During the months she remained in jail, Plaintiff suffered untreated psychosis, and CMHI doctors were "horrified" by her "alarming" condition when she arrived at the facility. (*Id.* at ¶ 104.) These allegations are also sufficient at this stage.[6]

## II.     The Individual Wellpath Defendants

The Wellpath Motion addresses each Individual Defendant and argues Plaintiff has failed to sufficiently plead conscious disregard of Plaintiff's serious medical needs. But the arguments are all flawed in the same respect: they overlook certain allegations in the Amended Complaint, and they apply a standard that is more onerous than what is required at this stage.

---

[6] To the extent one may argue that the Wellpath Defendants' independent failure to treat Plaintiff breaks the causal chain, the Court rejects that argument at this stage. An intervening act severs liability only where it was not reasonably foreseeable. *See Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990). Here, the Amended Complaint alleges that Defendant Barnes specifically knew the ACDF routinely failed to provide constitutionally adequate mental health care to detainees in Plaintiff's position. (Doc. No. 129 at ¶ 142.)

For example, the Wellpath Motion argues that Plaintiff "fails to identify the signs/symptoms Defendant Hass allegedly observed." (Doc. No. 148 at 9.) But this is simply not true. The Amended Complaint says Defendant Hass observed Plaintiff "screaming nonsensically, being combative incoherently, banging on the door, saying that staff were 'going to hell,' and obviously hallucinating by talking with an imagined or unreal entity she hallucinated to be next to her." (Doc. No. 129 at ¶ 52.) Similarly, the Wellpath Motion argues Plaintiff does not allege Defendant Perret "observed or was aware of [Plaintiff's psychosis]," but the Amended Complaint alleges Defendant Perret "observed" Plaintiff's "scratching, scabbed injuries to her wrists," and that Plaintiff "reported delusional statements to Defendant Perret." (Doc. No. 129 at ¶ 61; Doc. No. 148 at 13.) Generally-speaking, the Wellpath Motion underplays Plaintiff's allegations.

The Wellpath Motion also contends that Plaintiff fails to sufficiently allege knowledge of Plaintiff's mental state. But Plaintiff alleges that several Wellpath Defendants repeatedly observed, first-hand, Plaintiff's nonsensical screaming, hallucinating, inability to complete an assessment, inability to maintain basic hygiene, self-injuring, and eventually living among feces, food, and blood. (*See* Doc. No. 129 at ¶¶ 51–78.) This is sufficient. Pursuant to *Farmer,* "a factfinder may conclude that [the official] knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Moreover, that subjective knowledge may be proven by circumstantial evidence like any other fact. Thus, all Plaintiff needs to do at this stage is plead facts that make the relevant inference plausible. Plaintiff has done that.

Certain Wellpath Defendants appear to rely on the "difference-of-opinion" doctrine to argue that Plaintiff merely disagrees with the treatment she received, and that disagreement is insufficient to state a claim. (*See, e.g.*, Doc. No. 148 at 13 ("That Plaintiff disagrees with

15

Defendant Magley-Herman's professional opinion and decision not to refer Plaintiff to psychiatry or for a medication assessment amounts to a difference of opinion and is insufficient to state a claim for relief.").) Their argument is misplaced. Plaintiff alleges she received essentially no psychiatric treatment for more than three months. That is not a disagreement about a course of care, it is an allegation that no course of care was provided. *Cf. Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993) (affirming the dismissal of a deliberate indifference claim where the plaintiff complained of "leg cramps and swelling, and was prescribed a leg stocking" that the plaintiff alleged was an "improper prescription," because the plaintiff's "medical records reveal[ed] that he ... received consistent medical care .... [and the plaintiff's] complaint amount[ed] to a difference of opinion with the medical staff").

The Court recommends that claims be allowed to proceed.

## CONCLUSION

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Barnes Motion (Doc. No. 140) and Wellpath Motion (Doc. No. 148) be **DENIED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One*

16

*Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 6th day of August, 2026.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge

17